**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Lewis G. SHRYOCK, Defendant-Appellant.**

**No. 76–1148**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Aug. 20, 1976.

Rehearing and Rehearing En Banc Denied Sept. 30, 1976.

---

4. *See* Fed.R.Civ.P. 42.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Michael D. Labarbera, Tampa, Fla. (Court-appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., John E. Lund, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, GEWIN and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Lewis Shryock appeals his nonjury conviction[1] of thirty counts of mail fraud, 18 U.S.C.A. § 1341.[2] He claims that (i) the Government failed to establish the critical elements of mail fraud and (ii) the trial court erred in admitting testimony concerning mailings not directly related to the fraudulent scheme for which he was indicted.[3] We find no merit in either contention and therefore affirm.

Shryock was employed as the lease rental manager for Boe Wood Chevrolet in Tampa, Florida. The indictment alleged a scheme whereby thirty persons were induced to purchase previously leased automobiles with altered odometer readings. The pretrial Stipulation stated that (i) the odometers had been "set back" between 2,250 and 25,000 miles (Stipulation 7(c)) and (ii) Shryock was responsible for the set back (Stipulation 8(c)).

At the time of the alterations Florida law required that the owner or transferor and the purchaser of an automobile execute a certificate (DMV Form 88) stating the mileage at the time of transfer and that this certificate be attached to the application for change of title. Fla.Stat. § 319.35(3) & (4) (1970 Supp.).[4] Shryock stipulated that he would fill in and sign the DMV Form 88

---

1. The case was tried before the Judge on the basis of a stipulation and testimony by Shryock. R. at 8.

2. § 1341. Frauds and swindles

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

3. The testimony by Shryock concerning the mailing of warranties to General Motors was clearly admissible as it was not introduced as evidence for the case in chief, but rather for the purpose of impeachment during cross-examination of Shryock.

4. 319.35 Unlawful acts in connection with motor vehicle odometer readings; penalties.
   \*     \*     \*     \*     \*     \*

and that it was attached to the title application. (Stipulation 9(h)). It was also stipulated that no title would be issued unless the DMV Form 88 accompanied the application for transfer of title. (Stipulation 16). The Record also indicates that the DMV Form 88's contained the altered mileage and were signed by the purchaser and another employee of Boe Wood in addition to Shryock. The applications and DMV Form 88's were delivered to the Tampa Division of Motor Vehicles and then sent by mail to the Motor Vehicles Division of the Department of Highway Safety and Motor Vehicles in Tallahassee. The Florida Bureau of Title and Lien Services in Tallahassee mailed the new titles to the purchasers or lienholders.

■ The elements of mail fraud under § 1341 are (i) a scheme to defraud, and (ii) causing a mailing for the purpose of executing the scheme. *United States v. Green*, 5 Cir., 1974, 494 F.2d 820, 823, *cert. denied*, 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280. The Supreme Court, in *United States v. Maze*, 1974, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603, set out a two-pronged test for meeting the second element which requires that the defendant "cause" the mails to be used and that the mailings be "sufficiently closely related" to the scheme. 414 U.S. at 399, 94 S.Ct. at 647, 38 L.Ed.2d at 608.

■ To be sufficiently closely related the mailing must be "for the purpose of executing the scheme," *Kann v. United States*, 1944, 323 U.S. 88, 94, 65 S.Ct. 148, 150, 89 L.Ed. 88, 95, or "incident to an essential part of the scheme," *Pereira v. United States*, 1954, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435, 444.

■ There was ample evidence for the District Judge to conclude that Shryock was engaged in a scheme to fraudulently deceive prospective purchasers as to the actual mileage of the previously leased automobiles. Therefore the first element, a scheme to defraud, exists.

■ As to the second element, Shryock claims that he did not actually mail anything, as Boe Wood delivered the applications and DMV Form 88's by hand to the Tampa Division of Motor Vehicles and that he did not know that the Tampa office mailed the forms to Tallahassee. As the Supreme Court stated in *Pereira*, one "causes" the mails to be used if he "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen," even though use of the mails was not actually intended. 347 U.S. at 8–9, 74 S.Ct. at 363, 98 L.Ed. at 444; *accord United States v. Kenofskey*, 1917, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836. We find no fault with the decision of the trial judge that Shryock, who by his own testimony had been in the new and used car business for thirty years, could "reasonably foresee" that the mails would be used at some point in the transfer of titles from Boe Wood to the purchasers.

The transfer of title is a necessary step in the sales transaction, which was not actually completed until the title papers were processed. Since the title would not be transferred by the State unless the mileage certificate was completed and filed with the application for change of title, the mailing of the DMV Form 88's was essential to and for the purpose of executing the scheme and sufficiently closely related to it to meet the requirements of *Pereira* and *Maze*. *See United States v. Shepherd*, 5 Cir., 1975, 511 F.2d 119, 121.

AFFIRMED.

---

(3) Each owner or transferor under this section shall, at the time of transfer of any motor vehicle by him, and any person applying for a Florida title certificate shall execute a statement which shall include the mileage on the odometer at the time of transfer and this information shall be included on the application for title certificate.

(4) No title certificate shall be issued by the director of the division of motor vehicles on any motor vehicle unless there is filed with the application for title certificate a statement as prescribed in this section.